```
 1  KAREN P. HEWITT
    United States Attorney
 2  SAMUEL W. BETTWY
    Assistant U.S. Attorney
 3  California State Bar No. 94918
    Office of the U.S. Attorney
 4  Federal Office Building
    880 Front Street, Room 6293
 5  San Diego, California 92101-8893
    Telephone: (619) 557-7119
 6
    Attorneys for Federal Respondents
 7
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| PEDRO MARTINEZ-CARBAJAL, | ) No. 08cv0645-WQH (LSP) |
|---|---|
| Petitioner, | ) A23-223-001 |
| v. | ) |
| MICHAEL CHERTOFF, Secretary of Homeland Security, et al., | ) GOVERNMENT'S RETURN IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS |
| Respondents. | ) |

I

INTRODUCTION

The Petition should be denied because the Cuban government has agreed to accept the repatriation of Petitioner Martinez. In preparation for the repatriation, Immigration and Customs Enforcement ("ICE") has already transferred Martinez to Florida, where he will board a repatriation flight with other Cubans to Cuba in June 2008. Martinez has been fully aware of such plans since February 2008, yet be commenced these habeas proceedings on April 9, 2008, failing to mention such plans to this Court. If the Court does not deny the Petition, a status conference should be scheduled to take place in early July 2008.

///

II

FACTUAL BACKGROUND

Petitioner Martinez is a native and citizen of Cuba. [Exs. 12, 40.][1/] On June 4, 1980, he was paroled into the United States as a refugee. [Exs. 32, 40.] On July 19, 1983, he was ordered excluded and deported from the United States to Cuba. [Ex. 32.] However, since he could not be repatriated to Cuba, he was released from INS custody on August 21, 1984. [Id.] In 1985, Martinez departed the United States and attempted to reenter from Mexico. [Id.] He was apprehended and once again released from custody. [Id.]

Since then, Martinez has engaged in extensive criminal conduct. [Exs. 1-6, 12-13.] Most recently, on October 17, 2006, Martinez was convicted of Lewd Act on a Child and sentenced to two years in prison. [Exs. 7-14.] On April 20, 2007, U.S. Immigration and Customs Enforcement ("ICE") notified Martinez that, because of his criminal conduct since the date of his order of exclusion, he would be taken into custody upon his release from prison, and his case would be reviewed. [Exs. 15-16.]

On or about September 4, 2007, Martinez was released from prison and transferred to ICE custody. [Exs. 17; Pet. at 3.] On September 10, 2007, he was served with a notice of custody review. [Exs. 18-22.]

No later than November 26, 2007, Martinez had retained representation by Federal Defenders of San Diego which urged ICE to release Martinez upon expiration of the 90-day removal period due to the unlikelihood that Cuba would issue a travel document for his repatriation. [Exs. 23-27.]

///

///

---

[1/] "Ex." refers to the accompanying true copy of pertinent documents located in Martinez's DHS "A-File," No. A23-223-001.

1    On November 27, 2007, ICE conducted a 90-day custody review and
2 determined that it should continue detention due to Martinez's dangerousness to the
3 community. [Exs. 28-38.] Because the local ICE detention facility determined that
4 it was unlikely to obtain a travel document from the Cuban government, it referred
5 the case to ICE Headquarters. [Ex. 34.]
6    On January 28, 2008, ICE submitted a request to the Cuban government for a
7 travel document. [Ex. 43.] In February 2008, the Cuban government informed ICE
8 that Martinez had been accepted for repatriation. [Bettwy Declaration, para. 3.] On
9 February 26, 2008, ICE issued a Final Administrative Removal Order for presentation
10 to the Cuban government. [Id., para. 4; Exs. 39-42.] In February 2008, ICE
11 Deportation Officer Reyna informed Martinez that Cuba had accepted him for
12 repatriation. [Bettwy Declaration, para. 3.] He also informed Martinez that he would
13 be transferred to Florida, and then flown, in June 2008, to Cuba. [Id.]
14    Nonetheless, on April 9, 2008, Martinez commenced the instant habeas
15 proceedings, ostensibly *in propria persona*, seeking release from custody on the basis
16 of his assertion that his removal was not significantly likely in the reasonably
17 foreseeable future, without mentioning that ICE had informed him that Cuba had
18 agreed to his repatriation.
19    Martinez has been transferred to Florida [May 14, 2008 Letter of Martinez to
20 the Court], which is a staging area for the repatriation of Martinez and other Cubans.
21 [Bettwy Declaration, paras. 1-2.]
22    On May 14, 2008, Martinez filed a notice of change of address in which he
23 alleged that ICE had transferred him to Florida to prevent him from pursuing these
24 habeas proceedings and in which he did not mention ICE's stated purpose of
25 repatriating him to Cuba on a June 2008 flight.
26 ///
27
28

III

ARGUMENT

Martinez has failed to satisfy his burden to show that there is "no significant likelihood of removal in the reasonably foreseeable future." See Zadvydas v. Davis, 533 U.S. 678, 701 (2001). Moreover, ICE Deportation Officer Reyna informed Martinez in February 2008 that Cuba had approved his repatriation, and Martinez did not reveal that fact to the Court in his April 9, 2008 Petition.

By way of background, release from custody is not automatically mandated after the expiration of the six-month period:

> This six-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, <u>an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future</u>."

Id. (emphasis added). The Court held that the INS (now ICE) can continue to detain an alien beyond six months unless <u>the alien</u> establishes good reason to conclude there is no significant likelihood of removal. Once the alien makes such a showing, the burden is on the Government to rebut this showing.

> [O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

Id.

In the instant case, INS initially released Martinez in 1984 and then again in 1985, because it was apparent that his removal to Cuba was not likely in the reasonably foreseeable future. Martinez does not dispute ICE's authority to take him back into custody given his recent criminal conviction. Implicit within the authority of ICE to set conditions of release is the power to revoke release if conditions of release are not honored. See id. at 700 (if conditions of release are violated, "the

alien may no doubt be returned to custody upon a violation of those conditions").

> [W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.

Id. at 695. See 8 C.F.R.§ 241.13 (2001) (provides that an alien whose release is revoked may be held for an additional six-month period, after which the alien can endeavor to demonstrate that there is no significant likelihood of repatriation).

In February 2008, within five months after Martinez's return to ICE custody on September 10, 2007, the Cuban government agreed to accept the repatriation of Martinez, and ICE informed Martinez of that fact and of the fact that he would be flown to Cuba in June 2008. In his Petition, Martinez states only that there is no likelihood of obtaining travel documents from Cuba because of the long history of INS's and ICE's inability to obtain such documents, and he makes no mention of what Officer Reyna had first informed him in February 2008. [Pet. at 3.]

## IV

## CONCLUSION

For the reasons set forth above, the Petition should be denied or, in the alternative, a status conference should be scheduled for early July 2008.

DATED: May 19, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ *Samuel W. Bettwy*

SAMUEL W. BETTWY
Assistant U.S. Attorney