PEDRO MARTINEZ-CARBAJAL
A23-223-001
Krome Detention Center
18201 SW 12 St.
Miami, FL 33194

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO MARTINEZ-CARBAJAL,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL CHERTOFF, et al.,<br><br>Respondents. | Case No. 08CV0645-WQH (LSP)<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION |

I

**PROCEDURAL HISTORY**

On April 9, 2008, Petitioner filed a petition for writ of habeas corpus and a motion for appointment of counsel. On April 17, 2008, the Court denied Petitioner's request for appointment of counsel, without prejudice, stating that "Petitioner has clearly presented the facts and law in his Petition for Writ of Habeas Corpus." The Court ordered Respondents to answer the Petition by May 19, 2008, and gave Petitioner until June 16, 2008 to file a traverse.

Respondents filed their Return on May 19, 2008. In the Return, Respondents allege Petitioner is subject to imminent removal despite Cuba's forty-plus years of refusing to repatriate deportees. Respondents make this claim on the basis of an alleged e-mail communication from an ICE official, but no copy of the e-mail is provicded to support the claim. Nor do Respondents provide any exhibit which supports their claim that

the Cuban government "has agreed to accept the repatriation of Petitioner Martinez." Return at 1. Moreover, Respondents make veiled suggestions that the Petition was not brought in good faith and that information was concealed from the Court. Return at 1, 3-5. Nonetheless, in addition to calling for the Petition to be denied, Respondents ask in the alternative that the Court retain jurisdiction and conduct a status conference in early July. Return at 5.

As Respondents note, in early May 2008, while this Petition was still pending before this Court, ICE transferred Petitioner out of district to a detention facility in Florida. Return at 2. He remains in Respondents' custody at the Krome Detention Center in Miami, Florida.

Petitioner's Traverse is due on June 16, 2008.

## II

### STATEMENT OF FACTS

As noted in the previously filed Motion for Appointment of Counsel, Petitioner is a Cuban national. He has been ordered removed for conviction of an aggravated felony. However, Respondents have been unsuccessful for **fourteen years** in obtaining travel documents allowing Petitioner to be returned to Cuba.

Petitioner was born in Isla de Piño, Cuba on December 13, 1962. He came to the United States in 1980 as part of the Mariel boatlift. He was held in a refugee camp and eventually paroled into the United States. He was ordered removed to Cuba in 1983 following conviction of an aggravated felony. As return to Cuba is not reasonably foreseeable, he was released from custody on supervision in 1984.

The Petitioner was taken into custody on September 4, 2007, after being transferred from state prison. Petitioner has been in the continuous custody of ICE **for eight months.** ICE conducted a Post-Order Custody review and decided on **November 30, 2007,** to continue detention, claiming petitioner was a danger to the community. A subsequent review by the Headquarters Post-Order Custody Unit scheduled for February 2008 has not produced any decision. During the administrative review process, Petitioner was represented by

1 | Federal Defenders, like scores of other immigration detainees every year.

In February 2008, Petitioner informed counsel that ICE officials had lost his immigration file (A-file), including the final order of removal in his case. On counsel's advice, Petitioner consented to an administrative removal order to cooperate in reconstructing the missing A-file. During the same time period, ICE officials told Petitioner various, conflicting predictions about his fate, including that he would be detained for an extra four months beyond his headquarters custody review, an extra 180 days beyond that date, an extra year beyond that date, that his prior time in ICE custody would not count once the new administrative removal was entered, and finally, in March, that he was scheduled to be removed to Cuba, but that if he was not removed by April 20, he would be released. Petitioner's 180-day headquarters custody review in February 2008 was either never conducted or a decision never reached, as Petitioner was not served with a written notice of decision per 8 C.F.R. § 241.13(g)(2). Instead, on March 24, 2008, in response to a detainee request from Petitioner, an ICE officer asserted that the headquarters review had denied release and that Petitioner was now subject to only annual custody reviews.

Having been presented with no written decision on his custody review and nothing but conflicting, oral assertions about his future detention status, Petitioner filed his Petition on April 9, 2008. On April 12, 2008, again in response to Petitioner's request for information on the status of his case, an ICE officer replied that Petitioner would be transferred to Miami in two weeks. Nine days later, on April 21, 2008, counsel for Respondents received the first official word that Petitioner was being transferred to Florida for possible removal. See Declaration of Samuel W. Bettwy at 1. Neither Petitioner nor his counsel was ever given any written confirmation of this fact, even though the standard ICE form indicting Petitioner was represented by an attorney had been filed with ICE on November 13, 2007. See 8 C.F.R. §§ 103.5a & 241.4(d)(2) (requiring copies of all custody-related documents to be served on the detainee's counsel).

On or about April 17, 2008, counsel for Respondents contacted counsel for Petitioner and stated that

Petitioner was slated to be removed to Cuba. Counsel for Respondents could not supply any documentation for this astounding claim–contrary to 40 years' of intransigence by the Cuban government–nor point counsel to any official public, agreement with Cuba authorizing such a removal. Instead, counsel for Respondents agreed to facilitate a communication from ICE custody review officer Jesus Reyna outlining the basis and parameters for this sudden repatriation authorization, but omitting details of the actual removal for security reasons. Counsel for Petitioner e-mailed Officer Reyna on April 18, 2008, asking for copies of directives or agreements allowing removal to Cuba, or at least a reference to where that information could be accessed, particularly in light of the number of detained Cubans Federal Defenders would need to advise, not just Petitioner. On April 21, Officer Reyna responded to counsel for Respondents, stating only that "I hereby confirm that Mr. Martinez has been accepted for repatriation to Cuba. He will be transferred to Miami in the near future, which is the staging site for the repatriation flight." Thus, counsel was provided with no details supporting the claim that ICE has actual authorization for removal or the scope or timetable for any such agreement so that counsel could confirm that an agreement applied to Petitioner and that any removal would indeed occur in a reasonable time in the future.

On April 29, 2008, while the Petition was still pending before this Court, Petitioner was transferred out of district and eventually detained at Respondents' Krome facility in Miami, Florida, where he remains at present.

### III

### ARGUMENT

### THIS COURT SHOULD APPOINT COUNSEL FOR THE PETITIONER.

Habeas corpus proceedings "are of 'fundamental importance . . . in our constitutional scheme because they directly protect our most valued rights.'" Brown v. Vasquez, 952 F.2d 1164, 1169 (9th Cir. 1991) (quoting Bounds v. Smith, 430 U.S. 817, 828 (1977)) (citations omitted). Consequently, federal law permits

a district court to appoint counsel in a habeas proceeding under 28 U.S.C. § 2241 when the "interests of justice so require," if a petitioner has shown that he is unable to afford an attorney. 18 U.S.C. §3006A(a)(2)(B). To make this decision, this Court must "evaluate [1] the likelihood of success on the merits as well as [2] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983); see also Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997) (same) (citations omitted).

As previously noted in the original Motion for Appointment of Counsel, although Petitioner is likely to succeed on the merits of his claim if properly presented, he will not be able to articulate effectively his claims through a pro se action, in light of his limited educational background and the requirements of litigation in this case. Most importantly, because **Petitioner has now been transferred out of district**, his ability to receive timely service and to respond is greatly curtailed, and counsel should be appointed to ensure that these do not become de facto *ex parte* proceedings.

Petitioner's lack of education and any expertise in legal issues warrants the appointment of counsel. Petitioner arrived in the United States when he was almost 20 years old. He has attended no schooling in the United States and has not obtained any higher education. He has worked in unskilled positions, such as forklift driver and has no training in legal matters. The absence of any formal legal background or training poses an obstacle to Petitioner's understanding of the issues involved in the instant proceedings, and warrants the appointment of counsel to help him obtain the relief requested in his habeas. His native language is Spanish, and he has limited ability in English.

Petitioner's very limited education and lack of legal training would not allow him to prosecute a petition for writ of habeas corpus dealing with the highly complex area of immigration law. See United States v. Ahumada-Aguilar, 295 F.3d 943, 950 (9th Cir. 2002) (" '[w]ith only a small degree of hyperbole, the immigration laws have been deemed second only to the Internal Revenue Code in complexity.' " and "[a]

lawyer is often the only person who could thread the labyrinth.") (citations and internal quotations omitted).

Moreover, the facts of this case are far more complicated by recent events since the Petition was filed and the Court ruled originally on the Motion to Appoint Counsel. Despite the solid precedent of 40 years of refusals to accept repatriation, Respondents now argue that removal to Cuba is imminent. Nevertheless, Respondents have refused to supply counsel with even basic documentation for this claim. If there is indeed a formal, official agreement to accept repatriation, why can ICE not supply written evidence of it, or show that Petitioner indeed falls with the parameters of the agreement? Counsel for Petitioner–lacking any official description of the agreement–has information that the scope of the agreement to repatriate is limited to Cubans who were initially detained in international waters and that Cuba will continue to refuse those who reach U.S. territory before they were stopped. Nothing shows that Petitioner falls into the category of returnable Cubans, since he was initially detained by authorities after arriving in Key West and was not stopped on the high seas. Respondents effectively acknowledge the possibility that the alleged arrangements with the Cuban government may not pan out by arguing in the alternative that the Court maintain jurisdiction and hold a status of Petitioner's situation in early July. Return at 5.

As noted, Petitioner is likely to succeed on his original claim, because Cuba has categorically refused for decades to accept deportees' repatriation. Against this, Respondents now set their unsupported assertions that removal is imminent, but provide nothing to substantiate this except a declaration of counsel without even the unauthenticated e-mail from Officer Reyna. The documents attached to the Return, such the administrative removal order, Return Exhibits at 39-42, show only that Petitioner is *removable*, not that removal will occur in the reasonably foreseeable future as required under Zadvydas v. Davis, 533 U.S. 678 (2001). It does no more to shows that removal is actually imminent than production of an immigration judge's order of removal. Being subject to a removal order is not the same thing as that removal occurring within the reasonable limits established by the Supreme Court.

In denying the original motion, the Court reasoned that the Petition had "presented the facts and law" sufficiently to permit adequate consideration of his claims. However, in light of the evolving factual and legal nature of the claims, including allegations of bad faith and deceptive pleading which are contrary to the events outlined above, resolution of this Petition is far more complex than originally appeared. As the Return demonstrates, Respondents have information and documents relevant to resolving whether removal is imminent or chimerical, such as written protocols with the Cuban government and the content of communications between federal immigration officials and Cuban officials showing that acceptance of some in Petitioner's circumstances is indeed a realistic probability. Moreover, should factual disputes regarding these materials arise, it may be necessary–despite the Court's initial ruling to the contrary–that a hearing or at least oral argument may be required to air fully the contested issues in this case. That, too, strongly supports the granting of legal representation in this case. See Weygandt, 718 F.2d at 954 (need for evidentiary hearing warrants appointment of counsel).

Petitioner cannot effectively pursue and obtain discovery from Respondents that he will need to present his claims and his suitability for relief without the assistance of counsel, in light of his limited education, lack of familiarity with the legal procedures involved in requesting and obtaining discovery under the unique rules for habeas corpus proceedings, and the severe physical limitations on one in custody in a facility in another district on the opposite side of the country from the Court hearing his case.

The need for professional advocacy in ordinary Zadvydas cases has been repeatedly and consistently recognized by this Court in the past. See Appendices attached to the Fife Declaration. These orders show that it is the regular response of this Court to appoint counsel precisely for those in Petitioner's circumstances. The only difference between this and the other cases is that the legal issues here are **significantly more complex**.

## IV

## CONCLUSION

For the foregoing reasons, Petitioner respectfully request an order granting his request for appointment of counsel in time to allow counsel to file an appropriate Traverse in a timely fashion.

Respectfully submitted,

Dated: 5-29-08

**PEDRO MARTÍNEZ-CARBAJAL**
Petitioner